**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| CHELSTINE BICE,<br><br>        Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>        Defendant. | CASE NO. 5:25-CV-01849-DAC<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**MEMORANDUM OPINION AND ORDER** |

**INTRODUCTION**

Plaintiff Chelstine Bice challenges the Commissioner of Social Security's decision denying

disability insurance benefits (DIB). (ECF #1) The District Court has jurisdiction under 42 U.S.C.

§§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a

Report and Recommendation. (Non-document entry of Sept. 5, 2025). The parties then consented

to my exercising jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF #9). For the

reasons below, I **AFFIRM** the Commissioner's decision.

**PROCEDURAL BACKGROUND**

Ms. Bice applied for DIB on September 23, 2023, alleging she became disabled on June 10,

2023. (Tr. 177, 197). After the claim was denied initially and on reconsideration, Ms. Bice

requested a hearing before an Administrative Law Judge. (Tr. 67, 68, 77). In October 2024, Ms.

Bice (represented by counsel) and a vocational expert (VE) testified before the ALJ. (Tr. 37-62). On

November 25, 2024, the ALJ determined Ms. Bice was not disabled. (Tr. 17-30). On July 16, 2025,

the Appeals Council denied Ms. Bice's request to review the ALJ's decision, making the ALJ's

1

decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. § 404.981). Ms. Bice timely filed this action. (ECF #1).

FACTUAL BACKGROUND

## I.      Personal and Vocational Evidence

Ms. Bice was 36 years old on her alleged onset date and 37 years old at the administrative hearing. (*See* Tr. 63, 39). She was last insured against disability on June 30, 2024. (Tr. 17-18). She graduated high school and has worked as a daycare teacher. (Tr. 210, 58).

## II.     Medical Evidence[1]

Since her early twenties, Ms. Bice has been diagnosed with depression and anxiety. Her anxiety symptoms include sleep disturbances, restlessness, fatigue, difficulty concentrating, her mind going blank, and irritability; her depression symptoms include demotivation, inappetence, worry, and trouble falling asleep and relaxing. (*See, e.g.*, Tr. 613, 628, 546, 580). She has been undergoing regular counseling with the record containing treatment notes from January 2023 through September 2024. (*See, e.g.*, Tr. 613, 645, 682, 563). For at least the past three years, she has been prescribed Cymbalta for her depression at a consistent dosage. (*See, e.g.*, *id.*; *see also* Tr. 51, 55).

Mental status examinations were taken during Ms. Bice's regular counseling sessions. (*See* Tr. 613, 622, 625, 633, 636, 639, 642, 645, 648, 651, 654, 657, 661, 664, 672, 675, 678, 681, 684, 687, 546, 550, 553, 559, 562, 565, 568, 571, 574, 577, 580, 583, 585, 597) (ordered chronologically). Beginning in January 2023 through her alleged onset of disability in June 2023,

---

[1]      Although Ms. Bice faces physical limitations, I limit my discussion of the record to her mental limitations based on her representation that "[t]he issue before the Court is regarding her mental health." (ECF #8 at PageID 722).

2

Ms. Bice was assessed as generally anxious or depressed with a "mildly impaired" functional status but also fair-to-good insight, good judgment, intact memory, good attention/concentration, and unremarkable thought process. (Tr. 613, 616, 619, 622, 625, 633, 636, 639, 642). This trend continued after June 2023 through February 2024 with similar findings that Ms. Bice had "mildly impaired" functioning with anxious or depressed mood, good insight, intact memory, good attention/concentration, and an unremarkable thought process. (Tr. 642, 645, 648, 651, 654, 657, 661, 664, 672, 675, 678, 681, 684, 687). After March 2024, her functioning was rated "intact" alongside an anxious mood, good insight, intact memory, good attention/concentration, and an unremarkable thought process. (Tr. 546, 550, 553, 559, 562, 565, 568, 571, 574, 577).

In August 2024, Ms. Bice transitioned therapists to Pamala Schnier, M.S. Ed., LPCC-s. (Tr. 583). In their first session, Ms. Bice reported feeling on edge, having difficulty concentrating, worrying, struggling to relax, being easily irritable, and worrying something bad would happen. (Tr. 580). Ms. Schnier assessed Ms. Bice with the same findings as her predecessor: anxious mood, good insight, intact memory, good attention/concentration, unremarkable thought process, and intact functional status. (*Id.*). In both sessions in September, Ms. Schneir assessed similar findings but rated Ms. Bice's insight as "fair" instead of "good." (Tr. 585, 597).

 Treatment notes for Ms. Bice's physical conditions also noted her ongoing mental health conditions. (*See, e.g.*, Tr. 284, 290, 394, 450, 490, 518). Though the examinations were a part of Ms. Bice's treatment for physical impairments, the findings were generally normal. (*See* Tr. 285, 395-96, 452, 520, 530).

Ms. Bice underwent two rounds of diagnostic assessments of her anxiety and depression: the Generalized Anxiety Disorder-7 (GAD-7) and the Patient Health Questionnaire-9 (PHQ-9),

first in March 2024 and again in September 2024. (Tr. 541-45, 593-96). In March, the GAD-7 indicated mild anxiety symptoms and the PHQ-9 indicated mild depression symptoms. (Tr. 541-45). In September, the GAD-7 indicated moderate anxiety symptoms and the PHQ-9 again indicated mild depression symptoms. (Tr. 593-96).

### III.    Opinion Evidence

The state agency consultants did not issue opinions during initial and reconsideration review because the consultants concluded Ms. Bice was no longer insured against disability as of June 2023 and all the evidence in her file was dated after June 2023.[2] (Tr. 64-65, 70-71).

On September 24, 2024, Ms. Bice's therapist Pamela Schnier completed an opinion form about Ms. Bice's mental limitations. (Tr. 600-01). Ms. Schnier opined Ms. Bice can: (1) adapt to little changes in the work environment; (2) complete complex and multi-step tasks; (3) handle low work stress; (4) perform work involving confrontation, arbitration, and negotiation; (5) be responsible for the health, safety, and welfare of others; (6) supervise or manage others; and (7) influence others. (Tr. 600). Ms. Schnier opined Ms. Bice cannot handle strict time limits for completing tasks nor travel, drive, or deliver for work. (*Id.*). Ms. Schnier also opined Ms. Bice can "never" or "rare[ly]" (defined in the opinion 0-10% of the time) interact with the public, coworkers, or supervisors. (*Id.*). Ms. Schnier explained Ms. Bice "can handle complex tasks, however takes additional time, needs frequent breaks, difficulty being in vehicle for periods of time, no current employment – year – when working difficulty with lifting over 20 lbs." (*Id.*).

---

[2]    After the consultants issued their conclusions, a new earnings query established the date Ms. Bice was last insured against disability is June 2024. (*See* Tr. 199 ("DIS DLI: 06/24")). The ALJ used the 2024 date in the decision. (*See* Tr. 17-18).

Ms. Schnier further opined Ms. Bice would never be absent from work due to her impairments or treatment. (Tr. 601). Ms. Schnier estimated Ms. Bice would be off-task due to unreasonable breaks or rest periods for 10-15% of the time. (*Id.*). Ms. Schnier also marked "N/A" when asked whether "the claimant's subjective complaints regarding the intensity, persistence, and limiting effects of the condition(s)" were "consistent with your diagnoses and the limitations set within this form?" (*Id.*).

## IV.    Testimonial Evidence

Ms. Bice explained she cannot work because her arthritis, migraines, depression, and anxiety make it hard to get through her day-to-day tasks as tasks take her longer and she must take multiple breaks. (*See* Tr. 44-45). Her depression causes her to have bouts of crying during the day and saps her motivation, even just to get out of bed. (Tr. 49). She also experiences panic attacks where she cannot breathe and has chest pains. (Tr. 49). These attacks occur about three-to-four times a week and last up to ten minutes. (Tr. 49-50). They can be brought on by stress, being around people, or when she becomes irritated by other people. (Tr. 49-50).

Ms. Bice is in regular counseling every other week and takes medication for her depression and anxiety. (Tr. 48-49). She is prescribed medication through her primary-care physician. (Tr. 49). She has taken medication off-and-on since age 22 and has been on her current medication and dosage for about three years. (Tr. 51, 55).

Ms. Bice and her family split some of the household tasks like cooking and shopping. (*See* Tr. 43, 52, 56). She shops for groceries, does lighter loads of laundry, and does light cleaning like dishes, sweeping, and vacuuming all the while taking breaks as needed. (*See* Tr. 52, 56). She can drive, but she stays close to her house and rarely drives more than 15 minutes away. (Tr. 43,

53-54). When she goes on short trips in public, she avoids people. (Tr. 57). She can suffer claustrophobia when there are too many people in line at the store or become agitated if people are rude. (Tr. 57).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine whether a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this sequential analysis, the claimant has the burden of proof through Step Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform

6

other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. §§ 404.1520(c)-(f); *see also Walters*, 127 F.3d at 529.

### THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Bice had not worked from June 10, 2023—the date she claimed she became disabled—through June 30, 2024—the date she was last insured against disability. (Tr. 19). At Step Two, the ALJ identified undifferentiated connective tissue disease, hypertension, pervasive depressive disorder, and unspecified anxiety disorder as severe impairments. (*Id.*). At Step Three, the ALJ found Ms. Bice's impairments did not meet or medically equal the requirements of a listed impairment. (Tr. 21-22). At Step Four, the ALJ determined Ms. Bice's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) with the following additional restrictions: she can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs; she can occasionally stoop, kneel, crouch, and crawl; she must avoid exposure to hazards; she can attend to and carry out routine, repetitive tasks but not at a production rate pace; and, she can adapt to infrequent changes that are explained or demonstrated in advance.

(Tr. 22) (cleaned up). The ALJ found Ms. Bice cannot perform her past relevant work as a daycare teacher. (Tr. 28). At Step Five, the ALJ found Ms. Bice could perform other work, including as an information clerk, cashier, and ticket taker. (Tr. 28-29). Thus, the ALJ concluded Ms. Bice was not disabled through June 30, 2024. (Tr. 22).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the

7

correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters,* 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.,* 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.,* 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial

8

evidence supports the ALJ's decision, the court must overturn when an agency does not follow its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## DISCUSSION

### I.   Medical opinion analysis

Ms. Bice first argues the ALJ erred by finding Ms. Schnier's opinion unpersuasive because the ALJ mistakenly found the opined limitations on the quality and quantity of social interactions inconsistent with each other, improperly found Ms. Schnier unqualified to opine on how frequently Ms. Bice would be off-task or absent from work, and did not explain how the mental health records were inconsistent with Ms. Schnier's opinion. (ECF #8 at PageID 722, 727-29).

As part of the RFC assessment, the ALJ must review all medical opinions and explain their persuasiveness. *See* 20 C.F.R. § 404.1520c(b); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015). The ALJ considers five factors to determine persuasiveness: (1) supportability; (2) consistency; (3) the source's relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) the source's specialization; and (5) any other factors that support or contradict a

9

medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5). The regulations require the ALJ to "explain

how [the ALJ] considered the supportability and consistency factors for a medical source's medical

opinions," the two principal factors. *See id.* § 404.1520c(b)(2). An ALJ need not specifically use the

terms "supportability" or "consistency" so long as the analysis substantively engages with those

factors. *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022).

If the ALJ discusses both consistency and supportability and substantial evidence supports that

discussion, the court may not disturb the ALJ's findings. *Paradinovich v. Comm'r of Soc. Sec.*, No.

1:20-cv-1888, 2021 WL 5994043, at *7 (N.D. Ohio Sept. 28, 2021), *report and recommendation*

*adopted*, 2021 WL 5119354 (N.D. Ohio Nov. 4, 2021).

> The ALJ analyzed Ms. Schnier's opinion as follows:

> Turning to the claimant's mental health, the undersigned reviewed a mental assessment of the claimant's functioning submitted by her therapist, Pamela Schnier. Ms. Schnier opined that the claimant can handle routine changes in a work environment, can complete complex and multistep tasks, and can handle low stress work. Although she restricted the claimant to no more than rare interactions with the public, coworkers, or supervisors, she also stated that the claimant can perform work involving confrontation, arbitration, negotiation, that she can be responsible for the health, safety, or welfare of others, she can supervise or manage others, and she can influence others. The provider opined that the claimant would never be absent from work but that she would be off-task from 10 to 15% of the work period. She went on to discuss the claimant's physical limitations based on her statements, such as needing additional time and breaks, difficulty being in a vehicle for prolonged periods, and difficulty lifting over 20 pounds.

> The undersigned does not find Ms. Schnier's opinion persuasive as it is internally inconsistent regarding social interactions and concentration. As noted above, Ms. Schnier assessed the claimant as capable of engaging in activities that involve significant interactions with others but then later opined that she can rarely engage in such tasks. Furthermore, the amount of time the claimant would be off-task appears to have been based on her need for breaks and rest periods due to issues associated with her physical health, which is outside Ms. Schnier's area of expertise and treatment of the claimant. Nevertheless, even without the inconsistency, such limitations are not supported by nor consistent with the mental health treatment notes throughout the relevant period. While the notes document her anxious

10

presentations, her mental functioning has remained intact, including concentration, memory, orientation, thought process, insight, and judgment. At no point did a provider document an issue with such functioning.

(Tr. 27) (citations omitted).

Ms. Bice argues the ALJ was wrong to find the opined limitation to rarely (defined in the opinion as 0-10% of the time) interact with the public, coworkers, and supervisors inconsistent with the opinion that Ms. Bice can do work involving confrontation, arbitration, and negotiation. (*See* ECF #8 at PageID 727). Ms. Bice contends limitations on the quality of her social interactions and the quantity of those interactions are different and not inherently inconsistent with each other. (*Id.*). The Commissioner responds by simply asserting those limitations are inconsistent with each other. (ECF #10 at PageID 743).

District courts in this circuit have disagreed on whether limitations on the quality (*i.e.*, superficial interaction) and quantity (*i.e.*, occasional interactions) of a person's social interactions are different or are interchangeable. *See, e.g., Bobak v. Comm'r of Soc. Sec.*, No. 1:24-cv-2165, 2025 WL 2664461, at *11 (N.D. Ohio Sept. 18, 2025), *report and recommendation adopted*, 2026 WL 281039 (N.D. Ohio Feb. 3, 2026). That debate need not be resolved here because even if the limitations are different, different limitations can still be inconsistent with each other. For instance, a limitation that a claimant "cannot tolerate over the shoulder supervision" is inconsistent with a limitation that a claimant "requires additional supervisor support." *See Metz v. Comm'r of Soc. Sec.*, No. 1:24-cv-1671, 2025 WL 2047890, at *13 (N.D. Ohio July 22, 2025), *report and recommendation adopted*, 2025 WL 2307919 (N.D. Ohio Aug. 11, 2025). In another case, the court found an opinion that the "claimant has a fair ability to interact with others" was inconsistent with the different limitation "the claimant is incapable of low-stress work" because the

claimant "becomes highly anxious/panic ridden with normal work related conversations." *Gaskins v. Comm'r of Soc. Sec.*, No. 3:20-cv-1063, 2021 WL 3174792, at *9 (N.D. Ohio June 15, 2021) (internal quotations omitted), *report and recommendation adopted*, 2021 WL 3164992 (N.D. Ohio July 26, 2021).

Ms. Schnier opined Ms. Bice can perform work involving complex social interactions including confrontation, arbitration, and negotiation; taking care of the health, safety, or welfare of others; supervising or managing others; and influencing others. (Tr. 600). At the same time, Ms. Schnier opined Ms. Bice can "never" or "rarely" (defined in the opinion as 0-10% of the time) interact with the public, coworkers, or supervisors. (*See id.*). As Ms. Bice points out, this is not impossible as the opinion could mean she could spend up to 48 minutes (10% of an 8-hour workday) each among negotiating with the public, supervising coworkers, and influencing supervisors. (*See* ECF #11 at PageID 753, n.3). While not impossible, it is at least incongruent for Ms. Schnier to opine Ms. Bice can perform complex social interactions but only for the briefest periods. This tension is greatest between Ms. Schnier's opinion that Ms. Bice can be responsible for the health, safety, or welfare of others, but only for a small part of the workday.

Second, Ms. Bice argues the ALJ dismissed Ms. Schnier's opinion concerning the frequency with which Ms. Bice would be off-task because some of Ms. Schnier's general comments related to physical limitations. (ECF #8 at PageID 727-28). In relevant part, the ALJ found:

> The provider opined that the claimant would never be absent from work but that she would be off-task from 10 to 15% of the work period. She went on to discuss the claimant's physical limitations based on her statements . . . [t]he amount of time the claimant would be off-task appears to have been based on her need for breaks and rest periods due to issues associated with her physical health, which is outside Ms. Schnier's area of expertise and treatment of the claimant.

(Tr. 27). Ms. Schnier's expertise as Ms. Bice's therapist is a relevant factor for determining the persuasiveness of her opinion under 20 C.F.R. § 404.1520c(c)(4).

Ms. Schnier was asked "[p]lease provide an opinion to the approximate percentage which the claimant would be off-task at work due to <u>unreasonable breaks/rest periods</u>, interference with concentration, <u>persistence or pace</u>, or other related reasons" and she circled the range of 10-15%. (Tr. 601) (underlines in original). The underlines appear to be from Ms. Schnier. (*See id.*). Ms. Schnier also wrote in a general comments section that Ms. Bice is "[a]ble to handle complex task[s] however takes additional time, needs frequent breaks, difficulty being in [a] vehicle for periods of time, no current employment—year—when working difficulty with lifting over 20 lbs." (Tr. 600). Ms. Bice concedes "[t]he ALJ was correct that the other later comments by Ms. Schnier on physical limitations is outside her purview and should be ignored" but argues the ALJ went too far in concluding the off-task limitation had the same fault. (ECF #8 at PageID 728).

Ms. Schnier's opinion does not explain why Ms. Bice would be off-task 10-15% of the time. To the extent Ms. Schnier attempted to communicate through underlining, it is all the more confusing. If the underlining of "unreasonable breaks/rest periods" was intended to convey Ms. Bice would be off-task because she needed more breaks, then why did Ms. Schnier mark "NA" (presumably, "not applicable") when asked if Ms. Bice had "production performance" limitations? (Tr. 600). One would suspect if Ms. Schnier thought Ms. Bice needed more breaks, then Ms. Schnier would check the box for "No Strict Production Quotas." (*See id.*). Even more so if the underlining of "persistence or pace" was intended to convey Ms. Bice would be off-task because of a limitation in that area. Presumably if Ms. Bice could not maintain persistence or pace, then Ms. Schnier would note Ms. Bice has a "production performance" limitation but she did not. (*See id.*).

13

The closest explanation in the written comments are the simple statements that Ms. Bice "takes additional time" and "needs frequent breaks." (Tr. 600).

Ms. Bice insists the comments about needing additional time and frequent breaks relate to her mental health. (ECF #11 at PageID 753). The Commissioner contends the ALJ was reasonable in reading those limitations as describing Ms. Bice's physical limitations. (ECF #10 at PageID 743). Both parties insist a reasonable person would agree with their diametrically opposed readings of Ms. Schnier's opinion. (ECF #10 at PageID 743; ECF #11 at PageID 753). However, that is an incomplete description of the substantial-evidence standard, which is "such relevant evidence as a reasonable mind *might accept as adequate to support a conclusion.*" *Besaw*, 966 F.2d at 1030 (emphasis added). A reasoning mind would not accept the lack of explanation, confusing underlines, and inconsistent statements as adequate to support either party's reading of Ms. Schnier's opinion. At most, the limitations could just as easily be intended to accommodate either Ms. Bice's physical or mental limitations. And where substantial evidence can support opposite conclusions, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477.

Ms. Bice also argues the ALJ did not sufficiently explain how Ms. Schnier's opined limitations for off-task time and breaks were inconsistent with her treatment records. (ECF #8 at PageID 728-29). The ALJ found the limitations for off-task time and breaks inconsistent with the evidence:

> Nevertheless, even without the inconsistency, such limitations are not supported by nor consistent with the mental health treatment notes throughout the relevant period. While the notes document her anxious presentations, her mental functioning has remained intact, including concentration, memory, orientation, thought process, insight, and judgment. At no point did a provider document an issue with such functioning.

14

(Tr. 27). Ms. Bice criticizes this explanation as having no citations; ignoring evidence of her abnormal mood, irritability, hypervigilance, and issues with relationships; and not addressing her issues with contact with others and being off task. (ECF #8 at PageID 728-30).

Ms. Bice correctly notes the ALJ did not offer pinpoint citations that could have improved the ALJ's decision. That said, there is no requirement that an ALJ's decision include pinpoint citations. *Staib v. Comm'r of Soc. Sec.*, No. 4:23-cv-2353, 2024 WL 4534261, at *10 (N.D. Ohio Oct. 21, 2024); *Newman v. Comm'r of Soc. Sec.*, No. 5:22-cv-1982, 2023 WL 7092886, at *12 (N.D. Ohio Sept. 20, 2023) ("Although [the ALJ's] omission of specific page numbers is inconvenient, the omission has no effect on the validity of the ALJ's rationale."), *report and recommendation adopted*, 2023 WL 7048737 (N.D. Ohio Oct. 26, 2023). As stated above, the court looks to whether the ALJ discusses the regulatory factors and whether substantial evidence supports that discussion. *Paradinovich*, 2021 WL 5994043, at *7.

Here, even without pinpoint citations, substantial evidence supports the ALJ's discussion. The ALJ found "the notes document her anxious presentations, her mental functioning has remained intact, including concentration, memory, orientation, thought process, insight, and judgment." (Tr. 27). Looking at Ms. Schnier's treatment notes, each note documents Ms. Bice had an "anxious" mood but also had an "intact" functional status; she was oriented; and she had "good" or "fair" insight, "good" judgment/impulse control, "intact" memory, "good" attention/concentration, and an "unremarkable" thought process. (Tr. 580, 585, 597).

The treatment notes from Ms. Schnier's predecessor as Ms. Bice's therapist dated from before her alleged onset of disability in June 2023 contain similar findings of intact memory, good attention/concentration, and an unremarkable thought process but finding Ms. Bice had "mildly

15

impaired" functioning. (Tr. 642, 645, 648, 651, 654, 657, 661, 664, 672, 675, 678, 681, 684, 687). This trend continued after Ms. Bice claimed her disability began but starting in March 2024, the therapist noted Ms. Bice had an "intact" functional status. (*Contrast* Tr. 616, 619, 625, 633, 636, 639 (each noting "mildly impaired" functional status) *with* Tr. 546, 550, 553, 559, 562, 565, 568, 571, 574, 577) (finding "intact" functioning)).

The treatment notes from Ms. Schnier and her predecessor are substantial evidence supporting the ALJ's finding that Ms. Bice was anxious but her functioning was intact. As to whether Ms. Bice would be off-task, the notes document either good or intact attention, concentration, memory, and thought processes. These notes do not support Ms. Bice's claim that the ALJ was factually wrong in finding "[a]t no point did a provider document an issue with such functioning." (ECF #7 at PageID 729) (quoting Tr. 27). The ALJ's phrase of "such functioning" referred to the immediately preceding string of functional areas: Ms. Bice's "concentration, memory, orientation, thought process, insight, and judgment." (*See* Tr. 27). Though Ms. Bice reported to Ms. Schnier she had difficulty concentrating, Ms. Schnier consistently rated her concentration/attention as "good." (*See* Tr. 580, 585, 597).

I thus decline to order remand on this basis.

## II.      Harmonizing the findings at Step Three and Step Four

Ms. Bice also argues the ALJ did not explain why the RFC contains limitations corresponding to the ALJ's findings at Step Three that Ms. Bice has a mild limitation in interacting with others and a moderate limitation in maintaining concentration, persistence, and pace. (ECF #8 at PageID 730). The Commissioner responds that an ALJ's findings at Step Three are not RFC findings and the two need not directly correspond to each other. (ECF #10 at PageID 746-47). Ms. Bice replies that inconsistency between Step Three and Step Four findings can

16

nevertheless be reversible error. (*See* ECF #11 at PageID 755) (citing *Richardson v. Saul*, 511 F.Supp.3d 791, 798-99 (E.D. Ky. 2021)).

At Step Two of the sequential evaluation process, an ALJ must evaluate a claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If a claimant has a medically determinable mental impairment, an ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" following the regulations with respect to "four broad functional areas." *See id.* §§ 404.1520a(b)(2), (c)(3). If those ratings show the mental impairment is severe, the ALJ at Step Three compares the medical findings and the ratings to the criteria of the appropriate listed mental disorder. *Id.* § 404.1520a(d)(2). The four broad functional areas are commonly referred to as the "paragraph B" criteria as they are found in paragraph B of the listed impairments. *See Chidsey v. Kijakazi*, No. 1:20-cv-1858, 2022 WL 4599195, at *6 (N.D. Ohio Sept. 30, 2022); *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, 12.00A(2)(b).

By contrast, "[t]he mental residual functional capacity assessment used at [S]teps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." *See* Soc. Sec. Ruling (SSR) 96-8p, 1996 WL 374184, at *4 (July 2, 1996). As such, "the limitations identified in the paragraph B and paragraph C criteria are not an RFC assessment." *Id.* Thus, there is no mandate that paragraph B findings must correspond with the RFC findings. *See McDowell v. Comm'r of Soc. Sec.*, No. 1:20-cv-297, 2021 WL 1911459, at *9 (N.D. Ohio Apr. 19, 2021), *report and recommendation adopted*, 2021 WL 1909789 (N.D. Ohio May 12, 2021). Courts have thus held an ALJ is not required to include mental limitations in the RFC that correspond with mild limitations in the paragraph B findings. *See Chidsey*, 2022 WL 4599195, at

*8 (collecting cases). Thus, the ALJ was not required to incorporate a social limitation into the RFC that corresponds to the mild limitation in interacting with others the ALJ found at Step Three.

Turning to the moderate limitation in maintaining concentration, persistence, and pace, some courts have held moderate limitations are not mandated to be in the RFC. *See Cody v. Comm'r of Soc. Sec.*, No. 1:13-cv-344, 2013 WL 6074130, at *16 (N.D. Ohio Sept. 24, 2013) ("[J]ust because the ALJ 'cited with approval' Dr. Smith's findings of moderate limitations in Paragraph B criteria does not mean she was required to make corresponding findings when assessing Plaintiff's residual functional capacity."), *report and recommendation adopted*, 2013 WL 6065757 (N.D. Ohio Nov. 18, 2013). However, this court does not have to go that far because the RFC accommodates the moderate limitation in concentrating, persisting, and maintain pace found in Step Three. The RFC limits Ms. Bice from working at a production-rate pace. (Tr. 22). As the ALJ explained, "[t]o address the claimant's mental health symptoms and associated limitations, the undersigned has limited her to routine work with reduced stressors by precluding her from production rate pace tasks." (Tr. 26). Thus, the Step Three findings and the RFC are consistent.

Ms. Bice contends the whole decision must be consistent throughout and the paragraph B findings and the RFC must be not inconsistent with each other, citing *Richardson v. Saul*, 511 F.Supp.3d 791, 798-99 (E.D. Ky. 2021), as support. (ECF #11 at PageID 755). In *Richardson*, the ALJ erred because the ALJ's finding that the claimant had mild limitations in the paragraph B areas stood at odds with the "great weight" to a medical opinion that found mild-to-moderate impairments in the paragraph B areas and the ALJ did not explain why the RFC had no mental limitations. *See* 511 F.Supp.3d at 799-800. Because the ALJ did not address the inconsistency, the

18

reviewing court could not determine the impact of those mild-to-moderate limitations on the claimant's ability to perform work activity. *See id.*

*Richardson* is distinguishable as the ALJ here did not assign great weight to any medical opinion finding Ms. Bice faced mental limitations so there is no conflict between the RFC and a persuasive opinion that the ALJ must otherwise explain. *See* SSR 96-8p, 1996 WL 374184, at *7 (mandating if the ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted"); *Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 WL 2273365, at *3 (6th Cir. May 20, 2024). Other courts have distinguished *Richardson* on this basis. *See, e.g.*, *Plotkowski v. Comm'r of Soc. Sec.*, No. 2:20-cv-12011, 2022 WL 413371, at *7 (E.D. Mich. Jan. 18, 2022), *report and recommendation adopted*, 2022 WL 407079 (E.D. Mich. Feb. 9, 2022). Thus, the overall inconsistency in the ALJ's decision *Richardson* is not present here.

Moreover, the RFC incorporated the moderate limitation in maintaining pace, so the decision is consistent throughout on that matter. As for the mild limitation in interacting with others, the ALJ properly discounted Ms. Schnier's opinion on that limitation as both internally inconsistent and inconsistent with the record. No other opinion addressed Ms. Bice's social interactions. Thus, there was no conflict between the RFC and the opinion the ALJ had to explain. The most conflict Ms. Bice can point to is between the mild limitation in interacting with others and the lack of social limitations in the RFC. But mild limitations are not required to be reflected in the RFC, so any unexplained conflict here was not a reversible error. *See Chidsey*, 2022 WL 4599195, at *8 (collecting cases).

In sum, to the extent Ms. Bice makes a separate argument that the RFC must correspond to the paragraph B findings, I decline to order remand on that basis. The two findings are separate

19

inquiries and do not have to match perfectly. Nevertheless, the decision is consistent throughout because the RFC reflects the moderate limitation in maintaining pace found at Step Three by limiting Ms. Bice from working at a production rate pace. I thus decline to order remand on this basis.

### III.  RFC made completely of ALJ's own mind

Last, Ms. Bice asks "the Court should note that the ALJ's RFC was made completely of his own mind, as he rejected <u>every</u> medical opinion in the file and thereafter placed his own judgment ahead of the trained medical professionals." (ECF #8 at PageID 730) (emphasis in original). She contends the ALJ "did not indicate where he pulled the [mental] limitations from" and, in a footnote, expands that argument to all physical limitations. (*See id.* at PageID 731). The Commissioner responds that an ALJ's RFC may be supported by substantial evidence even if it is not consistent with a physician's opinion and the RFC was based on the evidence of Ms. Bice's mental and physical limitations including diagnostic imaging and treatment. (ECF #10 at PageID 747). Ms. Bice replies: "In the present case, we have no explanation as to why the given limitations were accepted, and why others were excluded. There simply is a lack of explanation." (ECF #11 at PageID 756).

To the extent Ms. Bice argues the ALJ erred by not basing RFC on a medical opinion, such an argument lacks merit. "An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner." *Shepard v. Comm'r of Soc. Sec.,* 705 F.App'x 435, 442 (6th Cir. 2017). Even after the ALJ rejects all the medical opinions, there is no requirement for the ALJ "to get the opinion of another physician before setting the residual functional capacity." *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.,* 732 F.App'x 395, 401 (6th Cir.

2018). Thus, the ALJ can issue an RFC without finding any medical opinion persuasive, so long as substantial evidence supports the RFC.

Turning to the argument that the "closest the ALJ came to an explanation was when it used boilerplate language" and the court is "left guessing as to why the ALJ reached the given RFC conclusions" (ECF #8 at PageID 731; ECF #11 at PageID 756), I find that at various points in the decision, the ALJ explained his thinking behind the limitations beyond mere boilerplate. Regarding Ms. Bice's mental limitations, the ALJ explained:

> The overall record shows that the claimant continues to manage with her mental health symptoms, despite her ongoing treatment. Nevertheless she is able to function in lower stress environments with reduced demands. To address the claimant's mental health symptoms and associated limitations, the undersigned has limited her to routine work with reduced stressors by precluding her from production rate pace tasks. These limitations account for her difficulty coping with stressors, her anxiety, as well as her limited motivation. This is also consistent with her reports of her daily activities and responsibilities at home.

(Tr. 26). This passage explains why the ALJ limited Ms. Bice from working at a production-rate pace and how that limitation was intended to accommodate Ms. Bice's symptoms of stress, anxiety, and amotivation. Thus, the ALJ explained the basis for the mental limitations in the RFC.

Though Ms. Bice's physical limitations were not the main subject of her brief, but merely a footnote, the ALJ provided a similar explanation for the physical limitations:

> Based on her testimony and the medical evidence of record, the undersigned finds that her symptoms limit her to only light exertion tasks. This addresses both the pain in her back as well as her reports of fatigue and weakness. Her postural tasks are also limited to only an occasional basis, again due to her back pain and generalized joint and muscle complaints. Both the exertional and postural limitations also account for the hypertension and seek to avoid exacerbation. The claimant is further restricted from hazards in order to ensure safety in the event of a pain flair up or potential lightheadedness due to possible spikes in her blood pressure.

(Tr. 25). Like the mental limitations, this explanation ties the RFC's limitations to light work with occasional stooping, kneeling, crouching, crawling, and climbing ramps and stairs to Ms. Bice's

21

complaints of pain, weakness, and fatigue due to her joint and muscle conditions. It also links the limitation to avoid workplace hazards to accommodate the symptoms of Ms. Bice's fluctuating blood pressure. Thus, the ALJ explained the basis for the physical limitations in the RFC.

Because the ALJ may issue an RFC without a medical opinion and the ALJ here explained the basis for the limitations, I decline to order remand for either of these arguments.

CONCLUSION

After review of the record, the parties' arguments, and the law, I **AFFIRM** the Commissioner's decision denying disability insurance benefits.

Dated: July 28, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

22